**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:07cv148**

| | | |
|---|---|---|
| **RICHIE J. BUCHANAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Supplement the Record [Doc. 13]; the Plaintiff's Motion for Judgment on the Pleadings [Doc. 15]; and the Defendant's Motion for Summary Judgment [Doc. 25].

**PROCEDURAL HISTORY**

The Plaintiff Richie J. Buchanan filed an application for a Period of Disability and Social Security Disability Insurance Benefits on February 2, 2004, alleging that he had become disabled as of September 25, 2003,

due to neck and back pain, muscle spasms, and numbness in his legs. [Transcript ("Tr.") 71, 94, 95).  The Plaintiff's claim was denied initially and on reconsideration.  [Tr. 66-70, 62-64].  The Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on July 21, 2006.  [Tr. 259].

On November 16, 2007, the Plaintiff submitted a request for review to the Appeals Council.  [Tr. 31].   The Appeals Council denied the Plaintiff's request for review on January 12, 2007.  [Tr. 26-28].  Plaintiff's counsel submitted a letter to the Appeals Council on January 19, 2007, requesting that the Council vacate its decision and render a new decision based on additional medical evidence.  [Tr. 25].  After considering the additional medical evidence, the Appeals Council again denied the Plaintiff's request [Tr. 20-23].  The Plaintiff filed a third request for review, citing additional evidence.  [Tr. 7].  After reviewing the newly submitted evidence, the Appeals Council denied the Plaintiff's request to reopen its decision, concluding that no basis existed for review.  [Tr. 5-6].

The Plaintiff filed this civil action on April 2, 2007.  [Doc. 2].  On October 16, 2007, the Plaintiff moved to supplement the record before this Court.  [Doc. 13].

## STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the

record to support the final decision below.  <u>Hays</u>, 907 F.2d at 1456; <u>Lester</u>

<u>v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982).


## THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows

a five-step sequential process.  20 C.F.R. §§404.1520, 416.920.  If the

claimant's case fails at any step, the ALJ does not go any further and

benefits are denied.  <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the

application is denied regardless of the medical condition, age, education,

or work experience of the applicant.  20 C.F.R. §§404.1520, 416.920.

Second, the applicant must show a severe impairment.  If the applicant

does not show any impairment or combination thereof which significantly

limits the physical or mental ability to perform work activities, then no

severe impairment is shown and the applicant is not disabled.  <u>Id.</u>  Third, if

the impairment meets or equals one of the listed impairments of Appendix

1, Subpart P, Regulation 4, the applicant is disabled regardless of age,

education or work experience.  <u>Id.</u>  Fourth, if the impairment does not meet

the criteria above but is still a severe impairment, then the ALJ reviews the

4

claimant's residual functional capacity and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fifth step.

## FACTS AS STATED IN THE RECORD

The Plaintiff Richie J. Buchanan was born on May 13, 1969 and was 34 years old at the time of the alleged onset of disability, September 15, 2003.  [Tr. 71].  The Plaintiff completed the 11th grade.  [Tr. 263].  He has prior work experience as a duct installer and construction worker.  [Tr. 263, 265].

### A.    Back and Neck Pain

The Plaintiff has a history of back and neck pain.  X-rays performed in January 2002 showed mild degenerative changes in his cervical spine, although the x-rays of his lumbar spine were negative.  [Tr. 175-76].  In

July 2003, the Plaintiff was seen at the emergency for low back pain and numbness in his legs.  He reported that he had a history of low back pain for the last nine years.  He was diagnosed with sciatica, prescribed pain medication, and released.  [Tr. 179-80].

In March 2004, the Plaintiff underwent a consultative examination by Albert Whitaker, M.D., Jr.  The Plaintiff related to Dr. Whitaker that he had sustained neck and low back injuries in 1990 in a motor vehicle accident and was later treated by a chiropractor for a fractured lumbar vertebra. The Plaintiff further reported that he was diagnosed with degenerative disc disease of the lumbar spine in 2001 and had been treated with non-steroidal anti-inflammatory drugs and an analgesic.  The Plaintiff reported that he continued to experience low back pain that is precipitated by heavy lifting, repetitive bending and stooping.  At the time of his examination in March 2004, he had not been evaluated by a physician in two years.  The Plaintiff reported taking over-the-counter analgesics for his low back pain. [Tr. 182].

Upon physical examination, Dr. Whitaker noted a limited range of motion in the cervical and lumbar spine, full 5/5 strength, and positive straight leg raising.  He further observed that the Plaintiff had normal

sensation and moderate tenderness to palpitation of his lumbar muscles and his left shoulder.  He further noted that the Plaintiff had full grip strength and full strength in the upper and lower extremities.  Based upon his findings, Dr. Whitaker concluded that the Plaintiff can sit for six hours in an eight-hour work day, can stand and walk for six hours in an eight-hour work day, can perform postural movements with some limitations, and can lift and carry 20 pounds occasionally.  [Tr. 184-85].

An MRI performed in October 2004 revealed mild degenerative changes and a mild C5-6 disc bulge but no herniation or stenosis in his cervical spine.  In the lumber spine, the MRI revealed a L4-L5 disc bulge and an annular tear at L5-S1 with no significant foraminal stenosis.  [Tr. 177-78].

From March 2004 to June 2006, the Plaintiff was seen by his primary care physician, Dr. Aregai Girmay, for complaints of chronic back pain.  Dr. Girmay repeatedly found that the Plaintiff had tenderness and a reduced range of motion in his back muscles but had full strength in his upper and lower extremities and negative straight leg raising.  [Tr. 196-219].  The Plaintiff was treated at the emergency room for neck and back pain in February 2005 and April 2006. [Tr. 236-41].

In November 2005, the Plaintiff was examined by Dr. Sivalingam Siva, a neurologist. Dr. Siva examined the Plaintiff and found that he had a full range of motion in his neck, negative straight leg raising, no sensory loss, and normal motor tone. While he noted a slight bulge at L4-5, Dr. Siva concluded that the Plaintiff did not have a surgical lesion. [Tr. 226-28].

Beginning in June 2006, the Plaintiff was treated by Dr. Herman Gore, an orthopedic surgeon, who diagnosed the Plaintiff with cervical and lumbar disc bulges, radicular pain, painful muscle spasm, and myofascial pain. Dr. Gore observed that the Plaintiff had tenderness and a limited range of motion in his cervical and lumbar spine but that he had full 5/5 strength, negative straight leg raising, and a functional range of motion in his joints. Dr. Gore further noted that the Plaintiff displayed an exaggerated pain response on palpation of the cervical muscles. Dr. Gore did not impose any work restrictions but recommended a short term program of physical therapy, epidural injections, and the use of a TENS unit. The Plaintiff was treated with cervical epidural injections in July and August, 2006. [Tr. 229-35, 245-48].

Two State agency consultants completed physical residual functional capacity assessments of the Plaintiff and concluded that the Plaintiff can sit, stand, or walk for about six hours in a work day, can push and pull, can lift and carry 20 pounds occasionally and 10 pounds frequently, has no postural limitations except occasional climbing, stooping, and crouching, and should avoid concentrated exposure to hazards.  Although the functional capacity assessment completed by Dr. Perry Cavaniss indicated that the Plaintiff can perform frequent but not constant reaching, handling, and fingering, Dr. McKensie Robinson indicated no manipulative limitations other than reaching in his assessment, noting that the Plaintiff had full grip strength.  [Tr. 133-63].

## B.    Mental Impairments

The Plaintiff did not list any mental problems as disabling impairments on his disability report, and the State agency consultants concluded that he did not have any severe mental impairments.  [Tr. 141, 153].  The Plaintiff's medical records indicate, however, that he received treatment for anxiety and depression in 2005.  The Plaintiff told Dr. Girmay in February 2005 that he had recurrent anxiety and nervousness, breathlessness, agitation, and sadness.  Dr. Girmay noted that the

Plaintiff's affect was anxious and that his attention and concentration were impaired. The Plaintiff was prescribed anti-depressants and referred to counseling. [Tr. 209]. The Plaintiff was treated briefly by a therapist and was diagnosed with major depressive disorder, panic disorder, and generalized anxiety disorder. The therapist noted that the Plaintiff seemed to be experiencing anxiety and depression due to chronic pain, decreased mobility, and financial/employment issues, but that he preferred that his symptoms be treated with medication rather than participating in counseling. [Tr. 220-25]. When the Plaintiff returned to see Dr. Girmay in May 2006, he made no complaints of mental problems, and Dr. Girmay described his mental status as normal. [Tr. 211].

## C.    Other Medical Issues

The medical evidence reveals that the Plaintiff has been treated for a number of medical problems, such as sinusitis aggravated by cigarette smoking, hypertension, and esophageal reflux, all of which either resolved with treatment or were well controlled by medications. [Tr. 203-04]. In January 2006, the Plaintiff was treated in the emergency room for a seizure. He reported at that time that he had a remote history of seizures

but had not had one in four or five years and had stopped taking anti-convulsant medications.  [Tr. 187-95].  At the hearing before the ALJ, he testified that he continues to take Dilantin for seizures but has not had another seizure during the period in question.  [Tr. 290].

### D.    Plaintiff's Testimony

At the ALJ hearing, the Plaintiff testified that he had worked as a duct installer for approximately 15 years, and that this job required him to be on his feet on concrete floors and to lift items weighing up to 200 pounds.  [Tr. 265-66].  He testified that he has been unable to work since September 2003 due to neck pain which radiates into his right arm and back pain which radiates into both legs.  [Tr. 267].  He testified that he experiences numbness in his hand and legs which last approximately 30 minutes at a time.  [Tr. 267, 268].  He further stated that he has muscle spasms that make his arms and legs jump, and that these muscle spasms are worse at night or if he has ridden too long in a car.  [Tr. 270].  He testified that he has problems with depression and has difficulty with memory and concentration.  [Tr. 271-72].  The Plaintiff testified that he has trouble sleeping and sleeps about four hours a night and will lie down during the day but does not take naps.  [Tr. 272].

The Plaintiff testified that he cannot find a comfortable position, that he can sit for 15 or 20 minutes and stand for 30 minutes at a time, that he can walk approximately 100 feet, and that he can lift approximately five pounds.  [Tr. 272-73].  While he can bend over and touch his toes occasionally, he cannot bend in a squatting position.  [Tr. 274].  He testified that he sometimes has trouble using his hands to turn a door knob or button clothes.  [Tr. 274].

With respect to activities of daily living, the Plaintiff testified that he lives in a rented trailer with his wife, who works at a convenience store.  [Tr. 264-65].  He spends the day watching television or reading.  The Plaintiff's wife does the household chores, yard work, and grocery shopping.  He testified that he does not hunt or fish, go to church, or do any shopping.  The Plaintiff does not drive due to his history of seizures.  [Tr. 274-75].  The Plaintiff is able to walk outside, and he receives visits from family and friends.  The Plaintiff testified that he smokes about a pack of cigarettes a day but does not drink alcohol.  [Tr. 276].

## THE ALJ'S DECISION

On September 18, 2006, the ALJ issued a decision denying the Plaintiff's claim. [Tr. 35-44]. Using the five-step sequential evaluation process promulgated by the Social Security Administration, see 20 C.F.R. §§404.1520, 416.920, the ALJ made the following findings. At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since September 15, 2003, the alleged onset date of disability. [Tr. 37]. At step two, the ALJ found that the Plaintiff has the following severe impairments: degenerative arthritis of the lumbar and cervical spine and depression with anxiety. [Tr. 37]. At step three, the ALJ concluded that none of the Plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 38].

Proceeding to step four, the ALJ determined the Plaintiff has the residual functional capacity to perform physical and mental work activities on a sustained basis despite limitations from his impairments. While finding that the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," the ALJ concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

credible." [Tr. 40]. Specifically, the ALJ noted that none of the medical reports contained complaints of symptoms to the extent alleged by the Plaintiff, and that the Plaintiff's complaints of pain were inconsistent with the medical evidence. Because the ALJ found the Plaintiff's testimony was not fully credible, he gave more weight to the medical treatment records and opinion evidence in determining the Plaintiff's residual functional capacity. [Tr. 40]. Considering all of the Plaintiff's impairments, the ALJ concluded that the Plaintiff has the residual functional capacity to perform light work with the following additional exertional and nonexertional limitations: a sit/stand option which would allow him to shift positions on an occasional basis; no more than occasional climbing, crouching, stooping, crawling, or kneeling; no more than occasional overhead reaching with the right upper extremity; no exposure to concentrated amounts of hazards; simple tasks and instructions; only occasional contact with others; and a low stress work environment with only occasional changes in work activities. [Tr. 39]. The ALJ went on to find that the Plaintiff is unable to perform any past relevant work as a duct installer and construction worker, and that he is a "younger individual" with a limited education and no transferable job skills. Finally, at step five of the sequential process, and

based upon the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. [Tr. 43]. Accordingly, the ALJ concluded that the Plaintiff has not been under a "disability" as defined by the Social Security Act from September 15, 2003 through the date of the decision, September 18, 2006. [Tr. 44].

**Additional Evidence Presented to the Appeals Council**

On January 10, 2007, Plaintiff's counsel submitted to the Appeals Council for consideration a Medical Source Statement completed by the Plaintiff's treating orthopedic surgeon, Dr. Martin Henegar, on December 28, 2006. In this Medical Source Statement, Dr. Henegar opines that the Plaintiff can sit continuously for only 15 minutes without having to change position; that he can sit for no more than two hours in an eight-hour day; that he can stand for only about 30 minutes; that he has to rest for about two hours per day because of pain; that he should never lift more than five pounds; and that he is likely to miss work more than three days a month because of his impairments. Dr. Henegar opines in his report that the

Plaintiff's condition has existed and persisted with these restrictions since September 15, 2003. [Tr. 252-58].

The Appeals Council denied the Plaintiff's request for review, finding that Dr. Henegar's opinion (1) postdates the hearing decision; (2) is inconsistent with the medical evidence of record; and (3) does not identify the specific medical evidence upon which it relies. [Tr. 20]. In response to the Appeals Council's decision, the Plaintiff's counsel submitted Dr. Henegar's office notes for the period of March 15, 2005 through December 5, 2006. [Tr. 7-19]. These records reflect that upon examination, the Plaintiff demonstrated decreased range of motion of his cervical and lumbar spine and give-way secondary to pain on strength testing of his legs and arms to a lesser degree. During an office on December 5, 2006, Dr. Henegar reviewed an MRI performed on November 20, 2006, noting that it showed "severe degenerative changes of L5-S1 and L4-5." [Tr. 9]. Dr. Henegar states in his notes that the Plaintiff "has failed conservative treatment and he is completely debilitated by his condition." [Tr. 9-10].

Upon review of Dr. Henegar's treatment notes, the Appeals Council again denied the Plaintiff's request for review, stating as follows:

> A review of this evidence and the medical evidence previously entered into evidence shows that the

claimant has been treated for neck and back pain; however, there has consistently been an absence of any neurological deficits in the record, including the new MRI evidence regarding the cervical and lumbar spine and the evidence of record does not show more than mild degenerative changes, with no evidence of nerve root compression, no anatomical basis for the claimant's subjective complaints of numbness and weakness in the upper extremities and the three records of treatment by Dr. Henegar in 2006 did not reveal any neurological deficits. Accordingly, the Appeals Council finds no basis for reopening the hearing decision.

[Tr. 5].

## Additional Evidence Presented to this Court

The Plaintiff has presented additional evidence to this Court relating to an operative procedure performed on May 10, 2007 by Dr. Henegar for lumbar and nerve root decompression and stabilization of the Plaintiff's lumbar spine. [Doc. 13, Attachment 1]. The Discharge Summary from this procedure indicates that the Plaintiff was neurologically stable and seemed to be improving following surgery. [Id., Attachment 3].

**DISCUSSION**

The Plaintiff argues that the Court should remand this case for consideration of additional evidence which was not available to the Plaintiff as of the date that the Appeals Council denied the Plaintiff's request to reopen. [Doc. 16]. Specifically, the Plaintiff seeks consideration of additional evidence relating to an operative procedure performed on May 10, 2007 by Dr. Henegar for decompression and stabilization of the Plaintiff's lumbar spine. [Doc. 13]. The Plaintiff contends that this additional evidence shows that the Plaintiff has experienced severe degenerative changes in his condition, and that contrary to the ALJ's findings, the Plaintiff had stenosis and nerve root compression. The Plaintiff argues that for these reasons, this additional evidence is likely to change the outcome of the case. [Doc. 14 at 2, Doc. 16 at 9].

The Defendant opposes the Plaintiff's request for remand and his motion to supplement the record. For grounds, the Defendant argues that this additional evidence is not material because it does not relate to the period of disability in question, September 15, 2003 to September 18, 2006. Even if such evidence did relate to the relevant time period, the Defendant argues, such evidence would not likely change the ALJ's

decision because it does not differ substantially from the evidence before the ALJ.  Further, the Defendant argues, the additional evidence indicates that the Plaintiff was stable neurologically and seemed to be improving after the surgery, a fact which tends to support, rather than contradict, the ALJ's decision.  [Docs. 22 at 2-4, 26 at 6-10].

The Court may remand a case to the Commissioner pursuant to sentence six of 42 U.S.C. §405(g) based upon the submission of additional evidence if four requirements are met.  First, the evidence must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative...."  Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983).  Second, the evidence must be material; that is, the Commissioner's decision "might reasonably have been different" had the new evidence been presented previously.  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979).  Third, the plaintiff must establish good cause for his failure to present such evidence in the prior proceeding.  Wilkins v. Secretary, Dep't of Health and Human Services, 953 F.2d 93, 96 n.3 (4th Cir. 1991).  Fourth, the plaintiff must present to the Court "at least a general showing of the nature" of the additional evidence.  King, 599 F.2d at 599.

The Plaintiff clearly has satisfied the third and fourth requirements for a remand in this case. The Plaintiff has provided copies of the medical records which he seeks to submit to the Commissioner, and thus, the Court is aware of the nature of the additional evidence. Further, there is good cause for the Plaintiff's failure to submit these records sooner, as the surgery was not performed until May 2007.

The Court finds that the evidence of Plaintiff's surgical procedure is relevant and material. While the surgery occurred after the Commissioner's decision, Dr. Henegar's records indicate that the Plaintiff's condition is a result of a degenerative process, and thus, this additional evidence is material to the Plaintiff's condition during the alleged period of disability. "Evidence of surgical operations performed after a denial of benefits have consistently been held relevant to whether the claimant was previously disabled." Tirado v. Bowen, 705 F.Supp. 179, 182 (S.D.N.Y. 1989); see also Mitchell, 699 F.2d at 189 (remanding case to Commissioner for consideration of claimant's subsequent hospitalization for a recurrence of previous symptoms); Bowen v. Secretary, Dep't of Health and Human Services, No. 90-2918, 1991 WL 1833, at *2 (4th Cir. Jan. 14, 1991) (remanding case to Commissioner where treating

physician's letter indicates that claimant's "present condition results from a degenerative process"); see also Kemp v. Weinberger, 522 F.2d 967, 969 (9th  Cir. 1975) (remanding case to Commissioner based on new medical showing advancement of degenerative arthritis).  The records of this surgical procedure also might "lend significant objective support to the subjective claim of disabling pain."  Borders v. Heckler, 777 F.2d 954, 955-56 (4th Cir. 1985); Willis v. Apfel, 116 F.Supp.2d 971, 976 (N.D. Ill. 2000) (evidence of subsequent surgery provides objective support for plaintiff's claim of subject pain); Sharpe v. Sullivan, 802 F.Supp. 938, 942 (W.D.N.Y. 1992) (evidence of subsequent back surgery probative on the issue of plaintiff's credibility regarding complaints of back pain made throughout alleged disability period).  For these reasons, the Court concludes that had the Commissioner been presented with this evidence, his decision "might reasonably have been different."  King, 599 F.2d at 599.

The additional evidence submitted by the Plaintiff to the Appeals Council also warrants a remand in this case.  These records reveal that the Plaintiff's degenerative condition continued to worsen to the point that Dr. Henegar opined in December 2006 that the Plaintiff had failed conservative treatment and was rendered "completely debilitated."  [Tr. 9-10].  The

Appeals Council rejected the Plaintiff's additional evidence, noting in part that this new evidence "does not show more than mild degenerative changes, with no evidence of nerve root compression."  [Tr. 5].  Contrary to the Appeals Council's finding, however, the November 2006 MRI clearly shows severe degenerative changes as well as a disc protrusion which "appears increased from the prior examination" and which "indents the proximal right S1 nerve root."  [Tr. 11].  Thus, the Appeals Council's conclusion that this new evidence shows only mild degenerative changes is not supported by substantial evidence.

For these reasons, the Court concludes that this matter should be remanded for reconsideration of this case by the ALJ in light of the additional evidence presented by the Plaintiff both to the Appeals Council and to this Court.


**O R D E R**

For the foregoing reasons, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Supplement the Record [Doc. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] is **GRANTED**, and the Defendant's Motion for Summary Judgment [Doc. 25] is **DENIED**.

**IT IS FURTHER ORDERED** that this case is hereby **REMANDED** pursuant to sentence six of 42 U.S.C. §405(g) for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Signed: August 22, 2008

Martin Reidinger
United States District Judge